1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

CATHERINE S. ORTIZ,                    )    1:11-cv-00064 SKO
                                       )
                                       )    **ORDER REGARDING PLAINTIFF'S**
            Plaintiff,                 )    **SOCIAL SECURITY COMPLAINT**
                                       )
      v.                               )    (Doc. 1)
                                       )
MICHAEL J. ASTRUE,                     )
Commissioner of Social Security,       )
                                       )
                                       )
            Defendant.                 )
                                       )
_____)

## INTRODUCTION

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act. 42 U.S.C. §§ 405(g); 1383(c). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 6, 7.)

**FACTUAL BACKGROUND**

Plaintiff was born in 1948, has a high school education, and has taken three years of college classes. (Administrative Record ("AR") 34, 89.)  Plaintiff previously worked as a store supervisor, but has not worked since the alleged onset date of August 15, 2005. (AR 14, 159.)  On August 11, 2006, Plaintiff filed an application for DIB, alleging disability due to spondylosis and degenerative disc disease. (AR 12, 100.)

Plaintiff has severe impairments caused by cervical, thoracic, and lumbar degenerative disc disease. (AR 14.)  These ongoing physical impairments have also contributed to Plaintiff's increased issues with depression. (AR 14.)

**A.     Medical Evidence**

On August 17, 2005, Plaintiff was initially diagnosed with a viral infection by Raman Verma, M.D., a treating physician specializing in internal medicine. (AR 226-27.)  On August 22, 2005, Dr. Verma noted that Plaintiff had anxiety and stress and prescribed Lexapro. (AR 225.)  On September 7, 2005, Dr. Verma examined Plaintiff and noted abdominal pain and fatigue, though he could not pinpoint the reason for Plaintiff's pain because all tests were negative; Dr. Verma also noted that Plaintiff had stopped taking the Lexapro. (AR 194-95.)  Dr. Verma treated Plaintiff again on October 5, 2005, and noted that it was possible that Plaintiff was developing collagen vascular disease or fibromyalgia. (AR 217-18.)  He also noted that, although Plaintiff was still complaining of pain, she had not taken her medication as advised. (AR 217-18.)

On October 11, 2005, Plaintiff was examined by Angela Pap, M.D., a treating physician specializing in internal medicine. (AR 214-16.)  Dr. Pap noted Plaintiff reported pain in her epigastric area and opined that Plaintiff's symptoms moderately limited her activities. (AR 214-16.)  On November 30, 2005, at Dr. Pap's request, Plaintiff underwent a gastroenterology consultation with Neshan Tabibian, M.D., a physician specializing in internal medicine and gastroenterology. (AR 229-30.)  Dr. Tabibian found no showing of disease after performing an ultrasound on Plaintiff, and also noted that "[Plaintiff] becomes fully pain free within a few days of using [medication]." (AR 229-30.)  On January 25, 2006, Dr. Tabibian further noted that it was unclear whether Plaintiff was suffering from muscle pain or acid reflux disease. (AR 228.)

On January 18, 2006, Dr. Pap diagnosed Plaintiff with myalgias after continued complaints of pain stemming from fatigue, headache, and muscle weakness.  (AR 202.)  Dr. Pap described Plaintiff's mood as depressed.  (AR 204.)  On February 8, 2006, Dr. Pap examined Plaintiff again for complaints of back and neck pain, and stated that the symptoms Plaintiff experienced could be alleviated by taking medication but that Plaintiff had not taken the medication.[2]  (AR 196.)  Also on February 8, 2006, Darrin Smith, M.D., a radiologist, examined Plaintiff's lumbar and cervical spine x-rays.  (AR 233.)  Dr. Smith noted mild bony demineralization in the lumbar spine and marked degenerative changes of the cervical spine.  (AR 233.)

On February 22, 2006, Plaintiff visited Dr. Pap with continued complaints of chronic back pain; Dr. Pap again noted that Plaintiff's symptoms were alleviated by medication.[3]  (AR 186-88.) On March 22, 2006, Hal McConnaughey, M.D., an orthopedic surgeon, examined Plaintiff at the request of Dr. Pap.  (AR 167-68.)  Dr. McConnaughey's consultation revealed straightening of the cervical lordosis and marked cervical spondylosis.  (AR 167-68.)  On April 7, 2006, Dr. Pap diagnosed Plaintiff with spinal stenosis in the cervical region following complaints of pain, numbness, and weakness in her left arm; however, a subsequent magnetic resonance imaging ("MRI") scan  revealed no evidence of spinal stenosis.  (AR 180-85.)  Dr. Pap also noted that Plaintiff's mood and affect were normal and that Plaintiff denied feelings of anxiety or depression. (AR 181-82.)

On May 12, 2006, an MRI of Plaintiff's lumbar spine revealed marked degenerative disc disease but otherwise "no significant bulge, herniation, central canal stenosis or neural foramen narrowing."  (AR 241.)  Dr. Smith conducted another MRI of Plaintiff's cervical spine which revealed marked degenerative disease and an apparent exiting nerve root effacement at the C4-5, C5-6 and C6-7 levels.  (AR 242.)  Dr. Smith also noted straightening of the cervical lordosis at the C4-5 level.  (AR 242.)

---

[2] Dr. Pap prescribed Flexeril and Ibuprofen.  (AR 198.)

[3] Plaintiff's medication included Protonix, Premarin, Zyrtec, and Excedrin.  (AR 167-68.)

On May 30, 2006, Dr. Pap examined Plaintiff for neck pain and hyperlipidemia, and again noted that Plaintiff's symptoms were alleviated by use of medication[4] and described Plaintiff's mood and affect as normal; Plaintiff again denied feelings of anxiety or depression. (AR 180-82.) On September 14, 2006, Plaintiff visited Dr. Pap yet again complaining of chronic back pain. (AR 169-71.) Dr. Pap opined that Plaintiff had signs and symptoms of myalgias in both upper extremities, but noted that Plaintiff's pain was alleviated by medication.[5] (AR 169.) Dr. Pap also noted that Plaintiff "has depression," although she made no findings of any depressive symptoms, did not list depression in the diagnosis section of the report, and noted that Plaintiff had normal mood and affect. (AR 171.)

On May 29, 2007, Plaintiff was examined by Dr. Pap for treatment of a rash. (AR 349.) Plaintiff was diagnosed with an unspecified allergy. (AR 350.) Plaintiff's mood and affect were noted to be normal. (AR 350.) On June 12, 2007, Plaintiff was examined by Dr. Pap for treatment of bronchitis. (AR 347.) No psychological symptoms or diagnoses were noted. (AR 347-48.)

On June 23, 2006, Caroline Millar, M.D., a radiologist, obtained x-rays of Plaintiff's cervical spine at Dr. Pap's request. (AR 231-32.) Dr. Millar reported straightening of the cervical lordosis, degenerative disc disease, and degenerative spondylosis. (AR 232.)

On October 24, 2006, E.E. Wong, M.D., a reviewing state agency physician specializing in internal medicine, completed a physical residual functional capacity ("RFC")[6] assessment form. (AR 251-55.) Based on his review of the medical evidence, Dr. Wong found that Plaintiff was able to (1) occasionally lift and/or carry 20 pounds; (2) frequently lift and/or carry 10 pounds; (3) stand and/or walk about six hours in an eight-hour workday; (4) sit about six hours in an eight-hour

---

[4] Dr Pap prescribed ibuprofen. (AR 182.)

[5] Plaintiff was prescribed Vicodin by her dentist to treat tooth pain. (AR

[6] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling ("SSR") 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

workday; and (5) push and/or pull without limitation. (AR 252.) Dr. Wong noted no postural, visual, communicative or environmental limitations; however, he noted that Plaintiff was unable to reach in all directions. (AR 253-55.) In his case analysis report, Dr. Wong recommended an RFC for light work, and questioned Plaintiff's credibility because of inconsistencies between the medical reports and the severity of Plaintiff's subjectively reported symptoms. (AR 280.) Dr. Wong's physical assessment was affirmed by Dr. Garcia on April 6, 2007. (AR 309-10.)

On November 2, 2006, Adam Brant, M.D., a neurosurgeon, examined Plaintiff for cervical spinal stenosis at the request of Dr. Pap. (AR 284-87.) Dr. Brant diagnosed Plaintiff with multilevel cervical degenerative disc disease and a "suggestion" of foraminal stenosis. (AR 286.) Dr. Brant noted that Plaintiff has decreased range of motion in her cervical area, but normal range of motion in her lumbar area. (AR 286.) He also noted no appearance of muscle atrophy, no neurological concerns, and that Plaintiff was able to ambulate without assistance. (AR 285.)

On November 11, 2006, Greg Hirokawa, Ph.D., a state agency examining psychiatrist, conducted a comprehensive psychiatric evaluation of Plaintiff. (AR 256-62.) Dr. Hirokawa diagnosed Plaintiff with adjustment disorder and mild depression due to her medical issues. (AR 260-61.) He described the likelihood of improvement in Plaintiff's mental condition as "fair." (AR 261.) Dr. Hirokawa found Plaintiff mentally capable of completing a normal workday without restriction. (AR 261-62.)

On December 15, 2006, Dr. Brant confirmed his previous diagnosis that Plaintiff has multilevel cervical degenerative disc disease. (AR 282-83.) Dr. Brant opined that bone scans of the cervical spine suggested facet arthropathy at the right C6-7 and T1 levels, and surgical options were presented to Plaintiff. (AR 282-83.) Dr. Brant again noted that Plaintiff was ambulating with a normal gait. (AR 282.)

On January 30, 2007, William von Kaenel, M.D., a treating physician specializing in pain management, provided a consultative examination of Plaintiff at Dr. Brant's request. (AR 321-24.) Dr. von Kaenel confirmed Dr. Brant's diagnosis, and planned to perform a cervical epidural steroid injection for treatment of radicular pain, and a facet joint injection for treatment of facet joint pain. (AR 324.)

On February 1, 2007, Plaintiff was examined by John Reifenberg, N.D./D.C., a chiropractor at Family Healthcare Network.  (AR 296-97.)  Dr. Reifenberg also examined Plaintiff on three subsequent visits.  (AR 288-95.)  At each examination, Dr. Reifenberg noted that Plaintiff's mood and affect were normal, her gait and posture were normal, but that Plaintiff still complained of significant distress from pain.  (AR 288-97.)  Dr. Reifenberg further noted that Plaintiff had mild to moderate tenderness in sections of her spine, with moderate pain in her shoulders and neck.  (AR 288.)

On March 7, 2007, Dr. von Kaenel noted improvement as to Plaintiff's pain[7] and scheduled surgery for April 12, 2007, to perform a blockade to the medial branch of the posterior primary ramus at L2-3.  (AR 313-14.)

On April 17, 2007, Dr. von Kaenel noted that Plaintiff reported one-hundred percent relief of thoracic pain immediately following the procedure, however, he did note an increase in pain during the follow-up visit.  (AR 311.)  Dr. von Kaenel further noted that Plaintiff continued to suffer pain in the facet joints and cervical region.  (AR 311.)

On November 9, 2007, Dr. Pap completed a Multiple Impairment Questionnaire of Plaintiff.  (AR 325-37.)  This Questionnaire was prepared approximately five months after Dr. Pap's last examinations of Plaintiff that occurred on May 29, 2007, and June 12, 2007 (see AR 347-50).  Dr. Pap opined that Plaintiff suffered from depression, cervical spinal stenosis, and severe back pain.  (AR 325.)  Dr. Pap listed Plaintiff's prognosis as "fair" and noted that Plaintiff was able to (1) sit for three hours in an eight-hour workday; (2) stand and/or walk for one hour in an eight-hour workday; and (3) occasionally lift and/or carry up to five pounds.  (AR 327-28.)  Dr. Pap also opined that Plaintiff was neither able to reach above her head repeatedly nor sit continuously for more than one to two hours without having to get up and move around.  (AR 327-28.)  Dr. Pap noted moderate limitations in (1) grasping, turning and twisting; (2) using fingers and hands for fine manipulations; and (3) using arms for reaching (including overhead).  (AR 328-29.)  She also marked a box indicating that Plaintiff could not perform a full-time competitive job on a sustained basis and noted

---

[7] Plaintiff reported her pain as 9 out of 10 previously, and 6.5 out of 10 in March 2007.  (AR 313.)

that Plaintiff was still suffering "significant symptoms" of depression despite taking prescribed medication.  (AR 330.)

On November 14, 2007, Dr. Pap examined Plaintiff, noted that Plaintiff denied depression and anxiety, but objectively observed that Plaintiff presented with normal mood and affect.  (AR 345-46.)  On November 27, 2007, Plaintiff was again examined by Dr. Pap who noted that Plaintiff's "back pain and depression significantly limits her ability to work on a daily basis for 8 hours [per] day.  I do hope that achieving better [control] of her depression will enable her to return to work [at] least on a part[-]time basis."  (AR 344.)

On January 11, 2008, Dr. Pap examined Plaintiff in connection with symptoms of depression, neck pain, and fibromyalgia.  (AR 339.)  Plaintiff described the symptoms as chronic, and Dr. Pap indicated that the symptoms moderately limited Plaintiff's activities; however, Dr. Pap indicated that the symptoms were alleviated by medication.  (AR 339.)

On May 7, 2008, Allen Hassan, M.D., a treating physician specializing in orthopedic and neurological assessments, completed a multiple impairments questionnaire.  (AR 359-66.)  Dr. Hassan diagnosed Plaintiff with several impairments, including cervical and lumbosacral spondylosis, facet joint arthropathy, osteoarthritis, fibromyalgia, chronic fatigue syndrome, depression, and osteoporosis.  (AR 359.)  Dr. Hassan listed Plaintiff's prognosis as "poor."  (AR 360.)  Dr. Hassan opined that Plaintiff could (1) sit for about four hours, possibly up to six, daily with frequent breaks; (2) stand/walk two hours in an eight-hour workday with breaks every five to ten minutes; and (3) lift and carry up to ten pounds occasionally.  (AR 362-63.)  He noted significant limitations in reaching, handling, fingering and lifting and further opined that Plaintiff could not perform a "full-time competitive job" on a sustained basis, partly because she would likely be absent more than three times per month.  (AR 363-65.)  Dr. Hassan also noted that Plaintiff had psychological limitations resulting from "emotional stress" and "financial and interpersonal conflicts."  (AR 365.)

**B.   Administrative Proceedings**

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 39-

57, 65.)  On September 17, 2008, Plaintiff appeared and testified at a hearing before ALJ James P. Berry.  (AR 19-38.)  At the hearing, Plaintiff complained of constant pain in her neck and lower back.  (AR 25.)  Plaintiff described the pain as a "dull ache" but indicated that medication and treatment helped temporarily relieve the pain.  (AR 25-26.)

According to Plaintiff, she could stand continuously for about ten to fifteen minutes and sit for approximately 15 to 20 minutes, but the pain made it uncomfortable to sleep at night.  (AR 27.) Plaintiff could wash dishes in the dishwasher, dust the furniture, and talk on the phone.  (AR 28-29.) Plaintiff stated that she was experiencing side effects from the medication resulting in fatigue and pain.  (AR 30.)  Plaintiff further testified that she could not work in her previous job because the job was "very physical."  (AR 31.)

A vocational expert ("VE") testified that, according to the Dictionary of Occupational Titles (the "DOT"), Plaintiff's past work as a store supervisor is described as a "light, skilled position" although Plaintiff performed it as a "medium to heavy" job.[8]  (AR 35.)  A hypothetical person of the same age, education, and work experience as Plaintiff *could* perform Plaintiff's past relevant work as described in the DOT, but not as previously performed by Plaintiff .  (AR 37.)  This hypothetical person could not perform any work, however, if that person had Plaintiff's self-described limitations. (AR 37.)  Furthermore, the VE testified that while Plaintiff had skills that could transfer to other types of occupations, those jobs would likely not be available due to Plaintiff's lack of education. (AR 36.)

On December 31, 2008, the ALJ issued a decision finding that Plaintiff is not disabled, as defined by the Social Security Act, since the application date of August 11, 2006.  (AR 12-18.) Specifically, the ALJ found that Plaintiff (1) has not engaged in substantial gainful activity since August 15, 2005; (2) has severe impairments of cervical, thoracic and lumbar degenerative disc disease; (3) does not have an impairment or combination of impairments that meets or equals a listed impairment set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the RFC to perform light

---

[8] The Social Security Administration has taken administrative notice of the DOT, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs. *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see also* 20 C.F.R. § 404.1566(d)(1).  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).

work as defined in 20 C.F.R. § 404.1567(b) with occasional overhead reaching; and (5) Plaintiff's RFC does not preclude performance of her past relevant work as a store supervisor, which is a light job according to the DOT. (AR 12-18.)

The ALJ found Plaintiff's allegations concerning the intensity, persistence, and limiting effects of her impairments not credible to the extent the statements were inconsistent with the RFC. (AR 16.) The ALJ cited twenty-two "clear and convincing reasons" supporting his conclusion that Plaintiff's allegations were not credible. (AR 16-17.) In determining the RFC, the ALJ rejected the opinions of Drs. Pap and Hassan who found that Plaintiff's physical and mental limitations precluded her from performing full-time work. (AR 17.)

Plaintiff sought review of this decision before the Appeals Council. (AR 7.) The Appeals Council denied review on November 22, 2010. (AR 1-4.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

On January 12, 2011, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. Plaintiff contends that the ALJ erred in rejecting the opinions of Drs. Pap and Hassan and in assessing Plaintiff's credibility.

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the

evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## **APPLICABLE LAW**

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient RFC despite the impairment or various limitations to perform her past work.[9] *Id.*

---

[9] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and

§§ 404.1520(f), 416.920(f).  If not, in the Fifth Step, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g).  If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

### A.    Weight of the Medical Evidence

#### 1.    Legal Standard

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Id.*  Where a treating or examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions. *Id.*  If the treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. *Id.* at 830-31; *accord Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009).  The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

#### 2.    The ALJ's Consideration of the Opinions of Drs. Pap and Hassan

Plaintiff asserts that the ALJ failed to state sufficient legal reasons to reject the medical opinions of Drs. Pap and Hassan.  (Doc. 9, 9-13.)  As Drs. Pap and Hassan are treating physicians,

---

'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

their opinions are entitled to deference.  *Lester*, 81 F.3d at 830.  With regard to the severity of Plaintiff's depressive symptoms, the opinions of Drs. Pap and Hassan are contradicted by examining physician Dr. Hirokawa who opined Plaintiff's mental condition caused only a mild degree of limitation and found her capable of completing a normal workday without restriction (*see* AR 256-62).  With regard to the severity of Plaintiff's physical limitations, the opinions of Drs. Pap and Hassan are contradicted by the non-examining state-agency physicians of record who found that Plaintiff retained the ability to perform light work.  Even though contradicted, the opinions of Drs. Pap and Hassan may only be rejected for specific and legitimate reasons that are supported by substantial evidence of record.  *Lester*, 81 F.3d at 830-31; *see also Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) ("[e]ven when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is 'still entitled to deference.'" (citations omitted)).

### a.   ALJ's Rejection of Dr. Pap's Opinion Based on Lack of Contemporaneous Examination

The ALJ rejected Dr. Pap's November 9, 2007, written report regarding Plaintiff's limitations, in part, because it was completed five months after Dr. Pap last examined Plaintiff, and thus did not present a current picture of the claimant's abilities.  (AR 17.)   The mere fact that the report was generated five months after Plaintiff's last examination comprises neither a specific nor legitimate reason to reject the opinion.  As to specificity, the ALJ did not discuss what aspects of Dr. Pap's November 9, 2007, opinion failed to present a current picture of Plaintiff's abilities; rather, it appears to have been rejected wholesale due to a lack of a contemporaneous examination.  Rejecting an opinion solely because it was not provided contemporaneously with an examination is not legitimate in light of the fact that non-examining physicians never conduct a contemporaneous examination in rendering their opinions, but rely on previous medical records – and these opinions may be found to constitute substantial evidence.  *See Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999) (report of non-examining physician may constitute substantial evidence if it is supported by other evidence in the record).   As Dr. Pap had treated Plaintiff since 2005, the lack of a contemporaneous examination when completing Plaintiff's report is not a legitimate rationale.  As a treating physician,

1    Dr. Pap had her own longitudinal treating records to draw upon as a basis for her opinion as well as

2    the records and opinions of doctors to whom Dr. Pap referred Plaintiff, such as Dr. Brant.  In the

3    absence of some specific reason to believe that Dr. Pap's November 9, 2007, opinion did not reflect

4    Plaintiff's current limitations, the ALJ's reasoning is neither specific nor legitimate.

5          **b.      Rejection of Dr. Pap's Opinion Because She is Not a Mental Health Specialist is Not Legitimate and Specific**

6

7          The ALJ determined that, to the extent Dr. Pap provided opinions regarding Plaintiff's mental

8    state, she is not a mental health physician expert.  Plaintiff contends that Dr. Pap is qualified to

9    render a medical-source opinion concerning Plaintiff's mental health issues even though Dr. Pap is

10   not a mental health expert.  (Doc. 9, 10:12-19.)  Specifically, Plaintiff cites to *Sprague v. Bowen*,

11   821 F.2d 1226 (9th Cir. 1987), in which the Ninth Circuit held that a medical doctor is competent

12   to provide testimony as to a claimant's mental health condition for which the doctor is treating the

13   claimant:

14          Not only is Dr. Gehlen permitted by state law and professional custom to practice
            psychiatry, by virtue of his treating of Mrs. Sprague's condition, including the
15          prescription of psychotherapeutic drugs, he in fact was practicing psychiatry.  Thus
            his evidence is medically acceptable.  20 C.F.R. § 404.1513(a)(1).  Dr. Gehlen's
16          opinion is competent psychiatric evidence, based on his clinical observations of Mrs.
            Sprague's depression.  "'Disability may be proved by medically-acceptable clinical
17          diagnoses, as well as by objective laboratory findings.'" *Bilby v. Shweiker*, 762 F.2d
            716, 719 (9th Cir. 1985) (quoting *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir.
18          1975)).

19   *Id.* at 1231.  To the extent that the ALJ found that Dr. Pap is not competent to render an opinion

20   regarding Plaintiff's mental condition, it was not a legitimate ground as Dr. Pap actually treated

21   Plaintiff for depression.  *Id.*  Attributing less weight to Dr. Pap's opinion in view of a lack of a

22   medical specialty in psychiatry, however, is appropriate.  The ALJ is encouraged to "give more

23   weight to the opinion of a specialist about medical issues related to his or her area of specialty than

24   to the opinion of a source who is not a specialist."  20 C.F.R. § 404.1527(d)(5).  Under certain

25   circumstances, a treating doctor's opinion may carry little weight, including where the opinion is on

26   a matter not related to her area of specialty.  *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.2 (9th

27   Cir. 2001).

28

Here, the ALJ did not indicate that he considered Dr. Pap's opinion as that provided by a competent medical source, but nevertheless found the opinion less probative because her specialty was not psychiatry.  Rather, due to a lack of an explanation setting forth the specific basis for the rejection, it appears that the ALJ discredited Dr. Pap's opinion on the ground that she was not competent to render an opinion as to Plaintiff's mental condition.  (AR 17 ("I also note that she made opinions regarding the claimant's mental state and she is not a mental health physician expert.")  Dr. Pap treated Plaintiff for her depression by prescribing Cymbalta.  Pursuant to *Sprague,* there is no basis to conclude that Dr. Pap was not competent to render an opinion regarding Plaintiff's depressive symptoms.  821 F.3d at 1231.  In this way, the rejection of Dr. Pap's opinion regarding Plaintiff's depressive symptoms was not specific and appears to be based on impermissible grounds; thus, it is not a specific and legitimate reason to reject the opinion.

### c.   Rejection of Dr. Pap's Opinion to the Extent it Provided an Opinion as to the Ultimate Issue of Disability

The ALJ stated that, to the extent Dr. Pap offered an opinion as to the ultimate issue of disability, i.e., Plaintiff's inability to work, that decision is reserved to the Commissioner.  An opinion offered by a doctor that a claimant is unable to work is not a medical opinion and is an opinion on the ultimate issue that is reserved for the ALJ.  *See* 20 C.F.R. § 404.1527; *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (holding that treating physician's opinion is not binding on the ALJ with respect to the ultimate determination of disability).  The ALJ may permissibly reject such statements.

However, Dr. Pap's November 9, 2007, opinion that Plaintiff could not perform full-time competitive work on a sustained basis (AR 330) and Dr. Pap's November 27, 2007, opinion that Plaintiff would not be able to perform regular full-time employment (AR 344) were not the sum total of her opinions regarding Plaintiff's condition.  Even though the ALJ may permissibly reject Dr. Pap's ultimate conclusion about Plaintiff's inability to work, this does not constitute a proper reason for the rejection of Dr. Pap's medical opinions with regard Plaintiff's limitations for walking, siting, standing, lifting and carrying weight, and Dr. Pap's observations and subjective professional judgment about Plaintiff's abilities and limitations given their three-year treating relationship.  *See*

1  *generally Embrey v. Bowen*, 849 F.2d 418, (9th Cir. 1988) ("The subjective judgments of treating

2  physicians are important, and properly play a part in their medical evaluations.")  Standing alone,

3  a rejection of Dr. Pap's statements regarding Plaintiff's inability to work does not justify a total

4  rejection of Dr. Pap's medical opinions and findings about Plaintiff's condition and the extent of her

5  impairments.

6          **d.**    **Rejection of Drs. Pap and Hassan's Opinions Lacked Specificity**

7          The ALJ also  rejected Dr. Pap's November 9, 2007, report because it was "inconsistent with

8  her own treating record."  (AR 17.)   Similarly, the ALJ rejected Dr. Hassan's May 7, 2008, report

9  (*see* AR 359-66) as follows:

10          I find the record does not support the drastic limitations he suggests.  I also find that

        the claimant's treating records and objective tests and testing do not support these

11          limitations.   I find further that these limitations are based in large part on the

        claimant's subjective complaints.

12

13  (AR 17.)

14          Plaintiff argues that unspecified inconsistencies with the medical evidence or the doctor's

15  own treating records do not constitute specific or legitimate grounds for discrediting the physician's

16  opinion.  The Court agrees.  With regard to Plaintiff's physical conditions, the only opinions that

17  directly contradict Drs. Pap and Hassan are those of the state-agency non-examining physicians. The

18  fact that the non-examining physicians' opinions are inconsistent with those of Plaintiff's treating

19  physicians does not, in and of itself, constitute permissible grounds to reject the opinions of the

20  treating physicians.  *Lester*, 81 F.3d at 830 (holding that ALJ's rejection of treating physician's

21  opinion was improper where it was based solely upon the testimony of a non-treating, non-examining

22  medical advisor).  Rather, the ALJ must offer other reasons in conjunction with the non-examining

23  physician's disagreement to provide a sufficient basis for rejecting the treating physician's opinion.

24  *Morgan*, 169 F.3d at 602 (standing alone, the opinion of a non-examining physician cannot

25  constitute substantial evidence justifying the rejection of an opinion provided by either a treating or

26  examining physician).  Here, the ALJ's rejection of Dr. Pap's opinion as inconsistent with her own

27  treating records and objective examinations and Dr. Hassan's opinion as not supported by the treating

28  records and objective testing was not sufficiently specific.

In *Embrey v. Bowen*, the ALJ's decision set forth the medical evidence and then offered the following conclusion:

> The opinions of total disability tended [sic] in the record are unsupported by sufficient objective findings and contrary to the preponderant conclusions mandated by those objective findings. The duration of the claimant's stress treadmill testing and relative lack of positive findings, the results of other laboratory and x-ray testing, the objective observations of the physicians of record, all preponderate toward a finding that the claimant has never lost the [RFC] for light work for any period approaching 12 months.

849 F.2d at 421. The court found this discussion of the evidence insufficient:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

*Id.* at 421-22.

The ALJ's general statement that the November 9, 2007, opinion of Dr. Pap was not consistent with the rest of her treating records is non-specific and requires the Court ferret out what it perceives to be inconsistent in Dr. Pap's various treating records in the first instance. The same is true of the ALJ's treatment of Dr. Hassan's opinion, which was rejected because it was not generally supported by the record or objective testing. While the ALJ noted some of the medical evidence in discussing Plaintiff's credibility, the citation to isolated findings of Drs. Pap and Hassan does not clarify the ALJ's assessment of these opinions. For example, the ALJ noted that in 2006 Dr. Pap stated Plaintiff's "most bothersome symptoms" were in her neck, but that her flexion, extension, and lateral bending of the cervical spine were only found to be mildly limiting. (AR 16.) The ALJ also noted that Dr. Pap found no sensory deficit in Plaintiff's upper extremities and found that claimant's straight leg raises were negative with no sensory or reflex changes in the lower extremities. (AR 16.) There is no discussion how these findings undercut the remainder of Dr. Pap's treating records that extend from 2005 through 2008 or how these 2006 findings render her

1   subsequent November 2007 opinion regarding Plaintiff's physical conditions (which are

2   degenerative) contradicted, unsupported, or otherwise unpersuasive.[10]

3          Similarly, the ALJ noted that Dr. Hassan found that Plaintiff has carpal tunnel syndrome, but

4   there is no objective testing establishing carpal tunnel.  (AR 17.)  This may be a reason to assign less

5   weight to Dr. Hassan's opinion that Plaintiff was "moderately to significantly" limited in her ability

6   to use her fingers and hands for fine manipulation.  (*See* AR 363).  This reasoning, however, was not

7   provided by the ALJ, and in any event, it does not provide a basis to discount Dr. Hassan's opinion

8   with regard to Plaintiff's back and neck conditions and how they impact her ability to sit, stand, and

9   lift or carry weight.   Thus, while a contradiction between a treating physician's opinion and her

10   treatment notes (*Valentine*, 574 F.3d at 692-93) or a contradiction between the physician's opinion

11   and other substantial evidence in the record (*Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190,

12   1195 (9th Cir. 2003)) constitute specific and legitimate reason for rejecting the treating physician's

13   opinion, here the Court is left to review the medical records and determine in the first instance what

14   inconsistencies or contradictions it finds *and*, more importantly, how those inconsistencies affect the

15   weight assigned to the opinion given.   This is not a reviewing court's role.

16

17

18          [10] The Court detects what it considers to be inconsistencies in Dr. Pap's opinion with regard to the severity of
    Plaintiff's mental condition.  For example, in her November 9, 2007, report, Dr. Pap noted that Plaintiff "still [has]
19   *significant* symptoms of depression despite [taking medication]" (AR 330) (emphasis added).  This opinion was directly
    contradicted a week later in Dr. Pap's November 14, 2007, treatment notes that indicated Plaintiff "denied depression
20   and anxiety" and that Plaintiff had "normal mood and affect." (AR 346.)   Again in contradiction, on November 27,
    2007, Dr. Pap opined that Plaintiff's "back pain and depression significantly limit her ability to work on a daily basis."
21   (AR 344.)   Despite the November 9 and 27, 2007, opinions, Dr. Pap's treatment records indicate that on numerous
    occasions, Plaintiff denied any problems with depression, and made objective observations that Plaintiff's mood and
22   affect were normal.   (AR 171, 178, 181, 182, 184, 185, 188, 198.)   In fact, on January 11, 2008, Dr. Pap reported that
    Plaintiff's depression only "moderately limits her activity" and that it was alleviated by Cymbalta which "mildly improves
23   symptoms."  (AR 339.)  If the Court stepped into the shoes of the ALJ, it might conclude that these inconsistencies
    undercut the weight afforded to Dr. Pap's opinion with regard to Plaintiff's depression.  (*Compare* AR 171, 178, 181,
24   182, 184, 185, 188, 198, 339 *with* AR 330, 344.)  Notwithstanding these seeming inconsistencies, they do not provide
    adequate grounds to discount Dr. Pap's opinion regarding Plaintiff's *physical* limitations.  More importantly, the Court
25   cannot affirm the ALJ's decision on reasoning not offered by the ALJ. *See Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219,
    1225-26 (9th Cir. 2009); *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *Johnson v. Heckler*, 741 F.2d 948, 952-53
26   (7th Cir. 1984).  Further, to the extent that Dr. Pap's opinion regarding Plaintiff's depressive symptoms is contradicted
    by Dr. Hirokawa's opinion, merely pointing out that the opinions are in conflict is not a sufficient reason to reject Dr.
27   Pap's opinion.  Even where a treating physician's opinion is contradicted by an examining physician, the treating
    physician's opinion is still entitled to deference unless the ALJ sets out legitimate and specific reasons why the treating
28   physician's opinion should be discounted.  *See Orn* 495 F.3d at 632.

The Commissioner's citation to caselaw indicating that an ALJ may reject medical opinions that are not adequately supported or are conclusory is inapposite. While there are numerous permissible reasons for an ALJ to discount the weight given to the opinion of a treating or examining physician, the ALJ must actually state those reasons and provide factual support from the record that constitutes substantial evidence. The ALJ's rejection of Dr. Pap's opinion as inconsistent with her treating records and Dr. Hirokawa's opinion, and the ALJ's rejection of Drs. Pap and Hassan's opinions on the grounds that they were not supported by the record or by objective testing, constitutes only a series of conclusions; it offers no discussion how the opinions were unsupported or contradicted or how this affected the weight given to the portions of opinions that were deemed by the ALJ to be contradicted. Pursuant to *Embrey*, this is not sufficiently specific nor is it conducive to judicial review.

In sum, the ALJ did not set out a thorough summary of the medical evidence or adequately discuss the reasons given for the weight assigned to the opinions. While the Court may make reasonable inferences regarding the rationale offered by the ALJ (*see Magallanes*, 881 F.2d at 755 ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion . . . if those inferences are there to be drawn")), the absence of a discussion of the medical evidence requires the Court to make findings about the weight of the medical evidence in the first instance or otherwise intuit how the ALJ reached his conclusions and affirm the decision based on rationale not provided – tasks which the Court is not empowered to undertake. *Bray*, 554 F.3d at 1225-26 ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."); *SEC*, 332 U.S. at 196 ("[I]n dealing with a determination or judgment which an administrative agency alone is authorized to make, [courts] must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis."). As the Second Circuit has noted, "[t]he requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases . . . ." The Court must leave the factual findings and the

assessment of weight to be afforded the medical evidence in the capable hands of the ALJ and not usurp the role that is expressly the province of the ALJ. *See* 42 U.S.C. § 405(b)(1); *see also Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (the ALJ is responsible for resolving conflicts in the evidence); *Johnson*, 741 F.2d at 952-53 (reviewing court may not usurp the administrative law judge's fact-finding function).

###    e.    Rejection of Dr. Hassan's Opinion As Based On Plaintiff's Subjective Complaints

Finally, the ALJ stated that Dr. Hassan's opinion appeared to be based on Plaintiff's subjective testimony. (AR 17.) Aside from the fact that this is non-specific as to what portion of the opinion appeared to be based on Plaintiff's subjective testimony, Plaintiff correctly notes that Dr. Hassan stated his opinion was predicated on review of X-rays and MRI scans, his own examination, as well as the Plaintiff's subjective reports. (AR 359-66.) The fact that Dr. Hassan considered Plaintiff's subjective testimony is a legally insufficient reason to discredit Dr. Hassan's opinion wholesale, despite that the ALJ found Plaintiff's testimony regarding her limitations not entirely credible.

As noted above, Dr. Hassan stated his opinion was based on objective testing. (AR 360.) Thus, the ALJ's doubts about Plaintiff's credibility do not justify the total rejection of Dr. Hassan's opinion. *Ryan*, 528 F.3d at 1199-1200 (ALJ may not reject physician's opinion that is based in part on claimant's subjective complaints "where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations"). Absent discussion of the evidence or citation to a particular portion of Dr. Hassan's opinion that appears predicated only on Plaintiff's subjective reports, this is not a legally sufficient reason to discount the opinion.

### 3.    Remand Is Required

The ALJ did not provide specific and legitimate reasons based on substantial evidence in the record to discount the opinions of Drs. Pap and Hassan. Generally, "[w]here the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, [the Court credits] that opinion as 'a matter of law.'" *Lester*, 81 F.3d at 830-34 (finding that, if doctors'

1    opinions and plaintiff's testimony were credited as true, plaintiff's condition met a listing (quoting

2    *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989))).   Crediting an opinion as a matter of law

3    is appropriate when, taking that opinion as true, the evidence supports a finding of disability. *See*

4    *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).

5        Courts retain flexibility, however, in applying this crediting-as-true theory. *Connett v.*

6    *Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there were

7    insufficient findings as to whether plaintiff's testimony should be credited as true). "In some cases,

8    automatic reversal would bestow a benefits windfall upon an undeserving, able claimant." *Barbato*

9    *v. Comm'r of Soc. Sec. Admin.*, 923 F. Supp. 1273, 1278 (C.D. Cal. 1996) (remanding for further

10   proceedings where the ALJ made a good-faith error in that some of his stated reasons for rejecting

11   a physician's opinion were legally insufficient).

12       Here, the ALJ erred because the stated reasons for rejecting the opinions of Drs. Pap and

13   Hassan are legally insufficient. "Such good faith errors inevitably will occur.   Reasonable judicial

14   minds sometimes will disagree regarding proper application of the rather imprecise standard of

15   'specific, legitimate' reasons." *Barbato*, 923 F. Supp. at 1278.   "[U]nder the rule in *Lester*, the

16   [medical] opinion will trigger benefits whenever the ALJ's previously stated reasons for rejecting

17   the opinion fall short of the ill-defined 'specific, legitimate' standard." *Id.* (footnote omitted).   "A

18   reviewing court should have discretion to avoid this inequitable result by remanding the case for

19   further administrative proceedings.   Remand necessitates delay, but the cost of this delay should be

20   balanced against the risk of an erroneous determination." *Id.*; *see also McAllister v. Sullivan*,

21   888 F.2d 599, 603 (9th Cir. 1989) (remanding for further proceedings because Secretary of Health

22   and Human Services was in better position than court to point to evidence in record to provide

23   specific, legitimate reasons to disregard treating physician's opinion).   Accordingly, the Court

24   exercises its discretion to remand this case to the Commissioner for further proceedings. *See*

25   *McAllister*, 888 F.2d at 603 (holding that court may remand to allow ALJ to provide the requisite

26   specific and legitimate reasons for disregarding medical opinions).

27       Because the Court remands this case for renewed consideration of the medical evidence, the

28   Court dispenses with an exhaustive analysis of the ALJ's credibility determination.   In light of the

Court's finding that the ALJ failed to properly evaluate the opinions of Drs. Pap and Hassan, and because credibility determinations are inescapably linked to conclusions regarding medical evidence, 20 C.F.R. § 404.1529, the ALJ's credibility finding is also reversed and the issue remanded.   The Court need not consider Plaintiff's argument regarding credibility in light of the need for reversal on other grounds. *See Marcia v. Sullivan*, 900 F.2d 172,177 n.6 (9th Cir. 1990) ("Because we remand for reconsideration of step three, we do not reach the other arguments raised."); *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) (per curiam) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims.").

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, REVERSED and the case REMANDED to the ALJ for further proceedings consistent with this order.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Catherine S. Ortiz and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

**Dated:    February 23, 2012            /s/ Sheila K. Oberto**
                                                UNITED STATES MAGISTRATE JUDGE